## 23057. BRANCH v. ANDERSON.

DECIDED NOVEMBER 18, 1933.

*C. L. Cowart, M. Price,* for plaintiff in error.

*H. H. Elders, P. M. Anderson,* contra.

GUERRY, J.   The verdict of a jury which has the approval of the trial judge will not be set aside by this court if it is supported by *any* evidence.   Civil Code (1910), § 6082; *Bell* v. *Aiken,* 1 *Ga. App.* 36 (2) (57 S. E. 1001) ; *Edge* v. *Thomas,* 9 *Ga. App.* 559 (71 S. E. 875).   If there is *no* evidence to support a finding, a new trial must be granted.   *Renwick* v. *LaGrange Bank,* 29 *Ga.* 200.   If there is doubt, the appellate court must decide in favor of verdicts.   *Brown* v. *Meador,* 83 *Ga.* 406 (9 S. E. 681).   With these principles in mind, we come to consider the evidence in the present case.   This is a suit against a doctor for alleged malpractice.   The petition alleged that in the performance of a necessary operation on the plaintiff's wife "the brutal way in which his wife was handled was the direct cause of her death . . ; that defendant did not exercise proper and reasonable or usual care and skill in the performance of said operation, . . and did not use the same degree of skill and care usually used by physicians under similar circumstances in that vicinity, . . and did not use due and usual and customary care in the use of said instruments, and as a result tore and lacerated the womb of the deceased wife, leaving it torn and lacerated with loose pieces thereof inside of the body; . . that he negligently failed to remove from said patient the dead child, and afterbirth; . . and that the same, acting together, caused the death of plaintiff's wife, by such failure to use due and ordinary care and skill in said operation."

Without going into detail, it may be said that the uncontradicted evidence showed that the plaintiff's wife had developed peritonitis on Wednesday before the defendant saw her on Friday morning for the first time; that another physician was treating her, and that fever had developed and her abdomen was swelling on Wednesday night and there was a dead foetus in her womb.   She weighed 265

pounds. This condition had grown worse on Thursday, and the attending doctor advised the calling in of another doctor, the defendant in this case. On Friday morning, when this doctor came, the patient's temperature was 102. The defendant was advised by the first attending physician that an abortion had been attempted by the patient some days prior to this time, and it was agreed that unless the "uterus was emptied, the patient would die." The first attending physician administered the ether and the defendant attempted to do the necessary work, but was unsuccessful. It was shown that on account of the size of the patient it was impossible to do what might ordinarily be done in a similar situation. The uncontradicted evidence of all the doctors, some five or six, was that what was done was what was usual and customary in like situations, and that peritonitis must have already developed before the defendant ever saw the patient. The evidence for the plaintiff is purely opinionative as to whether what was done was properly done, and failed entirely to show that the death of the patient was caused by the lack of care and skill on the part of the defendant. It was shown that the womb was ruptured and the fœtus was inside the abdominal cavity; that the patient must of necessity die unless the fœtus could be removed, and that on account of the attending conditions this situation, as to the uterus being ruptured and the fœtus being outside the womb in the abdominal cavity, could not be discovered by the use of ordinary care. Without setting out the evidence in detail, it may be said that it fails entirely to show that the defendant's conduct and treatment was the proximate cause of the death of the patient, if it in fact hastened it. It is uncontradicted that her death was due to peritonitis, and that this had been set in motion by means entirely disassociated from anything which the defendant might have done.

The court properly charged the jury, "If you find from the evidence that Mrs. Anderson died as a result of peritonitis which had already set up prior to the time of the first operation or examination on June 12, 1932, and which at that time had developed to such an extent that medical treatment could not prevent her death, then in that event you would not be authorized to find a verdict in favor of the plaintiff, even though you may find that the treatment administered by the defendants was not carefully and skilfully administered." The verdict rendered was contrary to this

charge, under the evidence introduced. The court also charged the jury, "If you find that the defendants used such care and skill in treating and operating upon Mrs. Anderson as under similar conditions and surroundings in that community are employed by the medical profession generally, then there could be no recovery." The only evidence introduced by the plaintiff in reference to such a lack of care and skill on the part of the defendant was from the plaintiff himself, who swore as follows: "Dr. Branch used some instruments. I do not know whether they were the proper instruments or not, but I would not judge from looking at them that they were. I would think that since the child was dead it was not necessary to produce an abortion. Dr. Branch failed to get anything except to tear her up, and I asked him not to, and he kept right on." Plaintiff also swore that he had witnessed one operation of the kind by another doctor, and that different instruments were used, and it was upon a woman weighing 140 pounds. "I just know from common judgment the instruments were not the proper kind." The testimony of the defendant and the other doctors sworn was overwhelming that the treatment administered and the methods and instruments used were what was accepted by the medical fraternity as being correct and proper under the circumstances. As unfortunate as are the circumstances surrounding the death of this wife and mother, this court, although mindful of its very limited power to interfere with the verdict of a jury, feels impelled to find that the plaintiff's evidence, taken in its most favorable light, fails to warrant a verdict that this doctor was brutal, or that the treatment administered caused the death of this woman, or that the degree of care and skill usual and customary in that vicinity was not administered to her. The uncontradicted testimony of the doctors, including that of Dr. Williams, of Savannah, who performed the final operation upon the patient, was that peritonitis, from which the patient died, developed on Tuesday or Wednesday before the alleged negligent operation on Friday, and that the negligence of the defendant doctor, if there was any, could not have been the cause of the death of the patient. "The fact that treatment has resulted unfavorably does not raise even a presumption of want of proper care, skill, or diligence." 21 R. C. L. 392. The court erred in refusing to grant a new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*